IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL WHITE, ) | |
| ) | 2:12-cv-00515-GEB-GGH |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER[*] |
| ) | |
| CITY OF VACAVILLE, a municipal ) | |
| corporation; RICHARD WORD, in ) | |
| his capacity as Chief of Police ) | |
| for the CITY OF VACAVILLE; ) | |
| DANIEL VALK, individually and in ) | |
| his capacity as a police officer ) | |
| for the CITY OF VACAVILLE; DOES ) | |
| 1-25, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Defendants City of Vacaville ("City"), Chief of Police Richard Word ("Word"), and Daniel Valk ("Valk") seek dismissal of Plaintiff's individual capacity equal protection claim alleged against Valk and DOES 1-25; Plaintiff's Fourteenth Amendment search and seizure claim alleged against Valk and DOES 1-25; Plaintiff's official capacity equal protection and search and seizure claims alleged against Valk and Word; and Plaintiff's Monell claim alleged against the City. Further, Defendants seek dismissal of Plaintiff's injunctive relief claim alleged against the City, arguing Plaintiff's allegations are insufficient to demonstrate he has standing. Plaintiff filed an opposition brief;

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

however "Plaintiff[] [does] not contest the dismissal of [his] [Fourteenth] Amendment cause of action as to [Valk] and DOES 1-25, pertaining to the actual search and direction of the search of Plaintiff." (Pl.'s Opp'n 4:11-13.)

## I. LEGAL STANDARD

"In reviewing the dismissal of a complaint, we inquire whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. Al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009). However, this tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007)).

In addressing "the Supreme Court's recent jurisprudence on the pleading requirements applicable to civil actions[,]" the Ninth Circuit focused on the following two principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

1  Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012)
2  (quoting Starr v. Bucca, 652 F.3d 1202, 1216 (9th Cir. 2011)). "In sum,
3  for a complaint to survive a motion to dismiss, the nonconclusory
4  'factual content,' and reasonable inferences from that content, must be
5  plausibly suggestive of a claim entitling the plaintiff to relief." Moss
6  v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (internal
7  citation omitted).

## II. STANDING

Defendants argue "Plaintiff has not alleged any facts establishing that he has standing to seek equitable relief [against the City]." (Defs.' Mot. 10:9-10.) Plaintiff counters that he has established standing for injunctive relief, arguing as follows:

> Given the lack of extraordinariness about this incident (the Defendants simply believed Plaintiff was concealing contraband, and then just went ahead and publicly disrobed him), and routine admission to the public strip search, every person, especially African-American people, may reasonably conclude that such Constitutional violations are condoned by [the City]. Plaintiff has every intention of continuing to be in public, in his wheelchair, in the [City]. Plaintiff is at risk of another humiliating public strip search whether or not he is involved in any suspicious activity.

(Pl.'s Opp'n 8:15-21.)

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. at

3

101-102 (internal quotation marks omitted). "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." Id. at 103.

Plaintiff seeks "injunctive relief enjoining [the City] from authorizing, allowing, or ratifying the practice by any police officer employee of [the City] from conducting unlawful strip searches against persons, and requiring Defendants to implement lawful training and policies[.]" (Complaint 6:24-27.) Therefore,

> [i]n order to establish an actual controversy in this case, [Plaintiff] would . . . not only [need] to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in [the City] *always* [strip search] any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such a manner.

City of Los Angeles v. Lyons, 461 U.S. 95, 105-06 (1983) (emphasis in original).

The substance of Plaintiff's injunctive relief allegations are as follows:

> Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto [City] policy condoning and/or ratifying such illegal searches. . . .
>
> Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the [City] Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

(Complaint ¶¶ 10, 18.) Since Plaintiff's allegations are insufficient to

4

create a likelihood "that he will be wronged in a similar way in the future," Plaintiff has not plausibly shown that he has the requisite stake in the outcome of the injunctive litigation he has commenced. Lyons, 461 U.S. at 111. Therefore, Plaintiff's injunctive relief claim against the City is dismissed.

### III. EQUAL PROTECTION CLAIM

Defendants argue Plaintiff's individual capacity equal protection claim against Valk and DOES 1-25 should be dismissed since it "contains no factual allegations at all to support a Fourteenth Amendment equal protection claim." (Defs.' Mot. 5:8-10.) Plaintiff rejoins that "Defendant Officers strip searched him in public because he appeared to be involved in a drug transaction, is African-American, and as such was subjected to extreme public humiliation as punishment." (Pl.'s Opp'n 4:24-26.) Further, Plaintiff contends, "[t]here being no other reason for the strip search, Plaintiff[] reasonably anticipate[s] discovery to show a pattern of similar racial animus, where African-American men are far more likely to be strip-searched in public by [City] Police Department officers than other races in comparable arrests and/or circumstances." Id. 4:26-5:2.

"[Section] 1983 claims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). "[T]he plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class." Cannon v. City of Petaluma, No. C 11-0651, 2012 WL 1183732, at *13 (N.D. Cal. Apr. 6, 2012).

Plaintiff's allegations regarding his equal protection claim

are as follows:

> Further, each plaintiff herein, readily recognizable as African-American, was strip searched, in part, because of his race. . . .
>
> In doing the acts complained of herein, each Defendant Officer named in their individual capacities, inclusive, and/or each of them, acted under color of law to deprive Plaintiff of . . . [t]he right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

(Complaint ¶¶ 12, 16.) Plaintiff's allegations "simply recite the elements of [an equal protection claim and do not] contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012). Therefore, Plaintiff's individual capacity equal protection claim against Valk and DOES 1-25 is dismissed.

### IV. OFFICIAL CAPACITY CLAIMS

Defendants argue Plaintiff's official capacity claims against Word and Valk should be dismissed, contending these claims are "unnecessarily redundant." (Defs.' Mot. 5:14-15, 7:1 n.2.) Plaintiff does not respond to this argument.

"An official capacity suit against a municipal officer is equivalent to a suit against the entity." Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008). Therefore, "[w]hen both a municipal officer and a local government entity are named, and the officer is named . . . in [his] official capacity, the court may dismiss [the claim against the officer in his official capacity] as . . . redundant." Id.; see also Fontana v. Alpine Cnty., 750 F. Supp. 2d 1148, 1155-56 (E.D. Cal. 2010) (dismissing a § 1983 claim against municipal officers in their official capacities

6

with prejudice as duplicative of claim against the municipality).

Since Plaintiff's allegations are insufficient to justify official capacity claims against Word and Valk, these claims are dismissed.

### V. MONELL CLAIMS

Defendants also argue that Plaintiff's Monell claim against the City should be dismissed since it "is unsupported by any *facts*; [t]he allegations are wholly conclusory and constitute nothing more than a formulaic recitation of the elements of Monell liability." (Defs.' Mot. 9:18-19.) Plaintiff rejoins that "she [sic] has properly alleged municipal liability." (Pl.'s Opp'n 5:19.) Specifically, Plaintiff argues as follows:

> The only reasonable conclusion is that [the City and Word] had a policy allowing the public strip search of persons arrested in similar circumstances as Plaintiff. The factual event of the public strip search of Plaintiff demonstrates the written or unwritten policy of [the City], presumably approved by [Word], authorizing such unconstitutional public strip searches of people in similar circumstances as Plaintiff. . . . Written or unwritten, [the City and Word], until there is any evidence to the contrary, Plaintiffs [sic] have *prima facie* established the this [sic] strip search of Plaintiff was allowable under the [City's] policies, as ratified by [Word] . . . .

Id. 6:26-7:9.

Under the Monell doctrine, "[m]unicipalities are considered persons under 42 U.S.C. § 1983 and thus may be liable for a constitutional deprivation." Waggy v. Spokane Cnty. Washington, 594 F.3d 707, 713 (9th Cir. 2010) (internal quotation marks omitted). However, "it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible." Id. "[A] municipality cannot be held liable under § 1983 on a respondeat superior

theory, that is, solely because it employs a tortfeasor." <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal quotation marks and emphasis omitted).

Therefore, "[Plaintiff] must show (1) that he possessed a constitutional right of which he was deprived; (2) that the [City] had a policy; (3) that the policy amounts to deliberate indifference to [Plaintiff's] constitutional right; and (4) that the policy is the moving force behind the constitutional violation." <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir. 2006) (internal citations and quotation marks omitted). "There also must be a direct causal link between the policy or custom and the injury, and [Plaintiff] must be able to demonstrate that the injury resulted from a permanent and well settled practice." <u>Id.</u>

The allegations comprising the substance of Plaintiff's <u>Monell</u> claim against the City are the following:

> Plaintiff alleges the stop, search, and public strip search of Plaintiff occurred at the direction of [Valk], who had arranged for a woman named Rebecca Jones to conduct a drug purchase from Plaintiff, in exchange for favorable treatment in a pending case. Ms. Jones allegedly gave Plaintiff $160 in marked currency for drugs. Plaintiff alleges [Valk] was in communication with the two defendant officers who conducted the public strip search, and that [Valk] was contemporaneously aware of the public strip search. [Valk] approved, ratified, and/or directed the public search of Plaintiff, and failed to intervene to prevent the public strip search of Plaintiff. No police officer involved in the subject-incident had any particularized suspicion or belief that Plaintiff possessed any weapon.
>
> Evidence seized from Plaintiff as a result of the "demeaning, dehumanizing, undignified, humiliating, embarrassing, repulsive, degrading, and extremely intrusive of one's personal privacy," public strip search of Plaintiff was ultimately ordered suppressed by a unanimous three judge panel of the California Court of Appeal, overruling the Superior Court of Solano County order denying Plaintiff's

8

motion to suppress. As noted in the California Court of Appeal opinion, there is no significant conflict between the testimony at preliminary hearing, establishing the aforementioned facts, between Plaintiff and [Valk].

Plaintiff alleges on information and belief that defendant officers performed the intrusive public strip-search without probable or reasonable cause pursuant to an official or de facto [City] policy condoning and/or ratifying such illegal searches. . . .

As against [City, Word] and/or DOES 15-25 in his/their capacity as official policy-maker(s) for the [City], Plaintiff further alleges that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the [City] Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

Plaintiffs [sic] are further informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of [the City, Word,] DOES 15-25, and each of them, to repeated acts of police misconduct, including intrusive, humiliating, public strip searches without probable or reasonable suspicion of criminal wrongdoing, which were tacitly authorized, encouraged or condoned by the [City, Word,] DOES 15-25, and each of them.

The injuries and damages to Plaintiffs [sic] as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of [the City, Word,] DOES 15-25, and each of them.

Plaintiffs [sic] are further informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendant VACAVILLE Police Department [sic].

Plaintiffs [sic] are further informed and believe and upon such information and belief allege that Plaintiffs' [sic] damages and injuries were caused by customs, policies, patterns or practices of [the City, Word,] DOES 15-25, and each of them, of

>deliberate indifference in the training, supervision and/or discipline of each individually named Defendant Officer and DOES 1-14, and/or each of them.
>
>The aforementioned customs, policies or practices of [the City, Word,] DOES 15-25, and each of them, resulted in the deprivation of Plaintiffs' [sic] constitutional rights including, but not limited to, the following:
>
>a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;
>
>b. The right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.

(Complaint ¶¶ 8-10, 18-23.) Plaintiff's allegations "simply recite the elements of [a Monell claim and do not] contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Hernandez v. County of Tulare, 666 F.3d 631, 637 (9th Cir. 2012). Therefore, Plaintiff's Monell claim against the City is dismissed.

## VI. CONCLUSION

For the stated reasons, Defendants' dismissal motion is GRANTED. Plaintiff is granted fourteen (14) days from the date on which this order is filed to file a First Amended Complaint addressing the deficiencies in any claim dismissed without prejudice.

Plaintiff is warned that a dismissal with prejudice could be entered under Federal Rule of Civil Procedure 41(b) if Plaintiff fails to file an amended complaint within the prescribed time period.

Dated: April 25, 2012

GARLAND E. BURRELL, JR.
United States District Judge

10